## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT HUIZENGA,<br><br>                    Plaintiff,<br><br>          v.<br><br>NYP HOLDINGS, INC. d/b/a the *New York Post*, JOELLE GWYNN and DOES 1-20,<br><br>                    Defendants. | No. 17-CV-2113<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Huizenga, professionally known as "Dr. H", by and through his undersigned attorneys, for his Complaint against defendants NYP Holdings, Inc. d/b/a the *New York Post*, Joelle Gwynn, and DOES 1-20 (collectively, "Defendants") alleges as follows:

### SUMMARY OF THE CASE

1.     Dr. Robert Huizenga, famously known as "Dr. H", is a world renowned health expert and one of the most esteemed sports doctors of all time.  Dr. H has spent a lifetime building his reputation for being the best in his field and for being an extremely responsible and ethical medical professional.  Dr. H advocates for safe and effective weight loss methods, and has championed his aggressive non-surgical, non-drug approach to obesity on the past 17 seasons of the hit television series "The Biggest Loser" (the "Show").  The safety and well-being of contestants on the Show are of utmost importance to Dr. H.

2.     On May 22, 2016 and May 23, 2016, respectively, the *New York Post* published numerous false and defamatory statements about Dr. H in the following publications: (a) the

story entitled, "'Biggest Loser' drugged us so we'd lose weight," published on or about May 22, 2016 (the "May 22, 2016 Post"); (b) the story entitled, "'Biggest Loser' contestants demand NBC cancel show," published on or about May 23, 2016 (the "First May 23, 2016 Post"); and (c) the story entitled, "'Biggest Loser' rigged weigh-ins by forcing contestants to eat baking soda," published on or about May 23, 2016 (the "Second May 23, 2016 Post") (collectively, the "Defamatory Posts"). The Defamatory Posts contain numerous false, fabricated, fictitious and outright libelous statements about Dr. H and his treatment of past contestants on the Show, including false statements by former contestant, defendant Joelle Gwynn. Among other things, the Defamatory Posts falsely state that the Show employs "secret and brutal tactics, which include providing illicit drugs to contestants and submitting them to questionable medical exams by the [S]how's resident doctor, Robert Huizenga, known as 'Dr. H'."

3.      Before the Defamatory Posts were published, Maureen Callahan, a reporter for the *New York Post*, reached out to Dr. H for an interview or comment. In response, Dr. H's attorney informed Ms. Callahan that her factual claims about Dr. H, which later were reported in the Defamatory Posts, were false and, if published, would be defamatory and cause substantial harm to Dr. H. Despite this actual notice and knowledge of the falsity of the statements about Dr. H, the *New York Post* published the false and defamatory statements about Dr. H in the Defamatory Posts. Moreover, a reporter for the *New York Post* has been directly contacting third parties, including but not limited to former Show contestants, implying that Dr. H's medical license be revoked.

4.      This lawsuit became necessary to protect Dr. H's hard-earned reputation and stature in the medical community, which he has spent the last several decades building and which

he cannot allow to be destroyed within seconds by Defendants' false statements in the Defamatory Posts.

## PARTIES

5.      Plaintiff is a resident of the City of Los Angeles, County of Los Angeles, State of California.

6.      Upon information and belief, NYP Holdings, Inc. ("NYP") is a Delaware corporation with its principal place of business located in New York City, County of New York, State of New York.  At all relevant times, NYP did business as the *New York Post* and owned, operated and published the *New York Post* and all of its corresponding webpages and websites, including www.nypost.com.

7.      Upon information and belief, defendant Joelle Gwynn ("Gwynn") is an individual domiciled in the County of Oakland, State of Michigan.

8.      Plaintiff is presently unaware of the identity of the defendants sued herein as DOES 1-20, and will amend this complaint to identify them once Plaintiff learns of their identities.   NYP, Gwynn and DOES 1 through 20 are collectively referred to herein as "Defendants."

9.      Upon information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and/or employers of each other and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture.  Upon further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by, and/or ratified by the other

Defendants, and each of them.

## JURISDICTION & VENUE

10.     This Court has personal jurisdiction over Defendants because they have minimum contacts with the State of New York, and Gwynn has confirmed that she will not contest personal jurisdiction in New York.

11.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000.

12.     Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b), in that NYP resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS RELEVANT TO ALL CAUSES OF ACTIONS

13.     Plaintiff Dr. Robert Huizenga, famously known as "Dr. H", is a world-renowned health expert and one of the most esteemed sports doctors of all time.

14.     Dr. H's aggressive non-surgical non-drug exercise-centric fat loss approach has proven to be extremely safe and reproducibly effective across the life of the Show.

15.     Dr. H has authored multiple scientific abstracts and papers on his aggressive non-surgical, non-drug exercise-centric fat loss approach.  He has also presented the details of this approach at multiple national medical conferences.

16.     The safety and well-being of contestants on the Show are of utmost importance to Dr. H.

17.     Dr. H has an impeccable reputation that he has spent the last several decades

building.  Dr. H has a reputation for being the best in his field and for being an extremely responsible and ethical medical professional.

18.     Dr. H is the former Los Angeles Raiders team physician whose groundbreaking first book was adapted for the film *Any Given Sunday*.  Dr. H was the valedictorian and an all-county athlete in football, wrestling and track at his high school.  He was an honor science student and NCAA All-American wrestler at the University of Michigan.  Dr. H then attended Harvard Medical School, where he was an all-star rugby player.  He did his medical residency at Cedars-Sinai Medical Center in Los Angeles, where he was appointed Chief Medical Resident and entered a pulmonary fellowship before leaving to serve as the team physician for the Los Angeles Raiders.  Dr. H was also the national medical correspondent for *Breakaway* (FOX) and *The Home Show* (ABC).

19.     After serving eight years as the LA Raiders team physician and four years as president and president-elect for the NFL Physician's Society, Dr. H wrote his first book, *You're OK, It's Just a Bruise: A Doctor's Sideline Secrets about Pro-Football's Most Outrageous Team*, which provoked a national debate on anabolic steroids and other ergogenic (sport-enhancing) aids as well as head injuries — decades before the Senate "steroid" and "CTE" (multiple concussion) hearings.

20.     Dr. H continues to be active in the world of professional sports and was requested to testify as an expert witness by the 2009 House of Representatives Judiciary Committee looking into repetitive brain injuries (CTE) in football players.

21.     Dr. H has repeatedly been interviewed as a health expert on NBC, CBS and ABC *Evening News*, *Today Show*, *Nightline* and *Larry King Live*, as well as in the *New York Times*,

*Los Angeles Times* and other national print media.  He has been called as a medical expert in multiple high-profile cases, including both the criminal and civil O.J. Simpson trials.  He has recurring roles as writer, correspondent, advisor and doctor on numerous TV shows and movies based on his sports medicine expertise and stellar reputation, including most recently:

    a) *Extreme Makeover* (ABC)

    b) *Biggest Loser* (NBC)

    c) *American Gladiators* (NBC)

    d) *Workout* (Bravo)

    e) *Student Body* (MTV)

    f) *Dance Your Ass Off* (Oxygen)

    g) *Fourth and Long* (Spike TV)

    h) *Diagnosis Live* (FOX)

    i) *Thinervention* (Bravo)

    j) *Losing It* (NBC)

    k) *Shedding For The Wedding* (CW Network)

    l) *Love Handles* (Discovery Network)

    m) *Extra Life Changers* (NBC)

    n) *Dale Con Ganas* (Univision)

    o) *Live To Dance* (CBS)

    p) *Joan and Melissa: Joan Knows Best* (WE TV)

    q) *The Doctors* (FOX)

    r) *Inside The Vault* (KTLA)

s) *Taboo* (National Geographic)

t) *Strong* (NBC)

u) *Beastmaster* (Netflix)

v) *Dr. Drew Show* (TLC)

w) *Dr. Oz Show* (ABC)

x) *Into The Wild* (feature film)

y) *Gone Girl* (feature film)

z) *Thirty Three Days* (feature film)

22.     In 2008, Dr. H authored the book, *Where Did the Fat Go? The Wow! Prescription to Reach Your Ideal Weight and Stay There*, about the radical exercise-centric obesity treatment he first pioneered in over 766 overweight applicants to NBC's *The Biggest Loser*, resulting in over 20 published peer-reviewed medical abstracts, articles or major medical conference presentations.

23.     Dr. H lectures throughout the country and runs The Clinic by Dr. H, a state of the art, multi-disciplinary fat loss facility in Southern California.

24.     Dr. H has deep sports and science-writer roots.  His father, John Robert Huizenga, was an all-star basketball and baseball player before serving as a member of the Manhattan Project and later receiving the Ernest Orlando Lawrence Award (the U.S. Nobel prize) in nuclear physics for his nuclear fusion research (including co-discovery of Einsteinium and Fermium, element numbers 99 and 100).

25.     On May 19, 2016, Maureen Callahan, a reporter for the *New York Post*, sent Dr. H's representative an email, asking to speak with Dr. H or for a comment about a story that she

was working on and, more specifically, the following **false** allegations supposedly made by Show contestants:

    a.   "That contestants have passed out in [Dr. H's] office right before the [Biggest Loser season 2] finale weigh-in."

    b.   "That contestants were starving themselves and using illegal drugs to lose weight rapidly," and that Dr. H "knew exactly what we were doing and never tried to stop it."

    c.   "In [Biggest Loser season 2] at least five people were rushed to the hospital."

    d.   "That contestants, post-show, have begged [Dr. H] for help once the weight comes back on, only to be given false promises or hear nothing."

26.    On May 20, 2016, Dr. H's attorney sent Ms. Callahan written notice that all of the claims in her email were false and, if published, would constitute defamation, including libel *per se*, and would cause substantial damages and harm to Dr. H.  Despite receiving this notice from Dr. H's attorney, on or about May 22, 2016, the *New York Post* published the May 22, 2016 Post. A true and correct copy of the May 22, 2016 Post is attached hereto as Exhibit A.

27.    The May 22, 2016 Post contains false statements of fact, of and concerning Dr. H, including false statements made by Gwynn.  Defendants knew the statements to be false at the time the May 22, 2016 Post was published.

28.    Many of these false statements, including statements by Gwynn, were repeated in the First May 23, 2016 Post and Second May 23, 2016 Post.  Additional false statements of and concerning Dr. H were made by Defendants in the First May 23, 2016 Post and Second May 23, 2016 Post.  Defendants knew the statements were false at the time the First May 23, 2016 and

Second May 23, 2016 Post were published.  True and correct copies of the First May 23, 2016

Post and Second May 23, 2016 Post are attached hereto as, respectively, Exhibit B and Exhibit C.

      29.    The false statements in the Defamatory Posts include, among others:

### The May 22, 2016 Post

    a.  "almost all 'Biggest Loser' contestants regain massive amounts of weight…"

    b.  "[Dr. H] encouraged contestants to take street drugs while starving themselves and to lie about how much weight they were losing."

    c.  What's missing from a recent study by Dr. Kevin Hall at the National Institutes of Health ("NIH") (done in collaboration with Dr. H) is "any examination of the show's secret and brutal tactics, which include providing illicit drugs to contestants and submitting them to questionable medical exams by the show's resident doctor, Rob Huizenga, known as 'Dr. H'."

    d.  "'People were passing out in Dr. H's office at the [Biggest Loser season 2] finale weigh-in,' …'[o]n season [2], five people had to be rushed to the hospital.  [Dr. H] knew exactly what we were doing and never tried to stop it.'"

    e.  "Many contestants return with grave medical issues they never had before."

    f.  Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating "'I felt jittery and hyper'…'I went and told the sports medicine guy.  The next day, Dr. H gave us some lame explanation of why they got added to our regimen and that it was up to us to

9

take them…People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do [*sic*] to fat people to make them lose weight. I feel like we got raped, too.'"

g.   "Dr. Rob Huizenga … urged contestants to take meds and go hungry."

h.   "Once eliminated, all contestants go home and are expected to keep losing weight, with no support from the show."

i.    "As for Huizenga's participation in the NIH study, Dr. Freedhoff is flummoxed. 'Dr. Huizenga has said things that challenge my understanding of obesity in general,' he says. 'He has a history of making rather ridiculous statements…plus the defense of the techniques on the 'The Biggest Loser' as do-able.  It's the worst thing to happen to sensible weight loss, ever.'"

**The First May 23, 2016 Post**

j.    "contestants were encouraged to go to extreme lengths to shed pounds, and five people were taken to the hospital in [season 2 of the Biggest Loser] after passing out."

k.    "Joelle Gwynn, of Season 7, said of the show's doctor, Rob Huizenga, told them it was 'up to us to take [the illicit drugs].'"

**The Second May 23, 2016 Post**

l.    "'The Biggest Loser' tried to boost its ratings by pushing boring contestants to ingest baking soda so that they would retain water and gain weight and get booted off…"

m. "the NBC show's doctor, Robert Huizenga, once told [a former contestant]

10

and several other contestants they needed to take two tablespoons of baking
soda to battle dehydration.  But it was just a ruse to eliminate them and make
room for 'more exciting' participants…"

30.     The foregoing false statements of fact were made by defendants with the intention
and knowledge that they were false and were likely to harm Dr. H's personal and professional
reputation, and/or with reckless disregard for the truth of the statements.  The false and libelous
statements had the foreseeable effect of severely harming Dr. H's personal and professional
reputation, and/or were made by Defendants to intentionally interfere with Dr. H's existing and
prospective business relationships.

31.     On May 31, 2016, Dr. H's counsel sent letters to Defendants demanding that they
remove each of the false statements in the Defamatory Posts and publish a correction, apology
and retraction of those statements, and allowed Defendants a reasonable amount of time to do so.
Defendants failed to comply with Dr. H's request, in whole or in part.

32.     Moreover, a reporter for the *New York Post* has been directly contacting third
parties, including but not limited to former Show contestants, implying that Dr. H's medical
license be revoked.

**FIRST CAUSE OF ACTION**
**(Defamation)**

33.     Plaintiff hereby repeats and realleges each and every allegation of Paragraphs 1
through 32 of this Complaint as if fully set forth herein.

34.     As described herein, on or about May 22, 2016 and May 23, 2016, Defendants
made, authored and/or published false statements about Dr. H in the Defamatory Posts.

35.     The false statements in the Defamatory Posts include, among others:

11

**The May 22, 2016 Post**

a.  "almost all 'Biggest Loser' contestants regain massive amounts of weight…"

b.  "[Dr. H] encouraged contestants to take street drugs while starving themselves and to lie about how much weight they were losing."

c.  What's missing from a recent study by Dr. Kevin Hall at the National Institutes of Health ("NIH") (done in collaboration with Dr. H) is "any examination of the show's secret and brutal tactics, which include providing illicit drugs to contestants and submitting them to questionable medical exams by the show's resident doctor, Rob Huizenga, known as 'Dr. H'."

d.  "'People were passing out in Dr. H's office at the [Biggest Loser season 2] finale weigh-in,' …'[o]n season [2], five people had to be rushed to the hospital.  [Dr. H] knew exactly what we were doing and never tried to stop it.'"

e.  "Many contestants return with grave medical issues they never had before.  "

f.  Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating "'I felt jittery and hyper'…'I went and told the sports medicine guy.  The next day, Dr. H gave us some lame explanation of why they got added to our regimen and that it was up to us to take them…People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do [sic] to fat people to make them lose weight. I feel like we got raped, too.'"

g.   "Dr. Rob Huizenga … urged contestants to take meds and go hungry."

h.  "Once eliminated, all contestants go home and are expected to keep losing weight, with no support from the show."

i.  "As for Huizenga's participation in the NIH study, Dr. Freedhoff is flummoxed.  'Dr. Huizenga has said things that challenge my understanding of obesity in general,' he says. 'He has a history of making rather ridiculous statements…plus the defense of the techniques on the 'The Biggest Loser' as do-able.  It's the worst thing to happen to sensible weight loss, ever.'"

**The First May 23, 2016 Post**

j.  "contestants were encouraged to go to extreme lengths to shed pounds, and five people were taken to the hospital in [season 2 of the Biggest Loser] after passing out."

k.  "Joelle Gwynn, of Season 7, said of the show's doctor, Rob Huizenga, told them it was 'up to us to take [the illicit drugs].'"

**The Second May 23, 2016 Post**

l.  "'The Biggest Loser' tried to boost its ratings by pushing boring contestants to ingest baking soda so that they would retain water and gain weight and get booted off…"

m.  "the NBC show's doctor, Robert Huizenga, once told [a former contestant] and several other contestants they needed to take two tablespoons of baking soda to battle dehydration.  But it was just a ruse to eliminate them and make room for 'more exciting' participants…"

36.   These false statements wrongly accuse Plaintiff of having made statements and

acted in a manner that would subject him to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of a substantial number in the community and were calculated to harm his social and business relationships and did harm his social and business relationships and potentially may even lead to the termination or suspension of his medical license.

37.    The false statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community and to deter others from associating or dealing with Plaintiff.

38.    Furthermore, Defendants' statements involve materially false implications.

39.    The statements made by Defendants were false, and no applicable privilege or authorization protecting the statements can attach to them.  The statements set forth above do not involve matters of public concern.

40.    Defendants published the false statements to third parties, including but not limited to the viewers and/or readers of *The New York Post* and/or www.nypost.com, Show contestants, and third parties with existing and/or potential business relationships with Dr. H, with knowledge of falsity of the statements and/or reckless disregard for the truth of the statements.

41.    Plaintiff has been seriously damaged as a direct and proximate cause of the falsity of the statements made by Defendants, in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business and duties as a medical professional.  Because the statements were widely disseminated on the Internet, they were also likely and intended to hold the Plaintiff up to ridicule and to damage his social and business relationships.

42.    The above-referenced published statements constitute egregious conduct constituting malice.  Defendants' acts were willful and malicious.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' making of the above-referenced defamatory statements, in an amount to be determined at trial, but believed to be in excess of $75,000.

43.    Plaintiff has complied with all notice requirements prior to filing this action by informing Defendants of their defamatory statements and requesting a retraction, in letters dated May 31, 2016, and allowing Defendants a reasonable amount of time to make such retraction.

### SECOND CAUSE OF ACTION
**(Defamation *Per Se*)**

44.    Plaintiff hereby repeats and realleges each and every allegation of Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.    As described herein, on or about May 22, 2016 and May 23, 2016, Defendants made, authored and/or published false statements about Dr. H in the Defamatory Posts.

46.    The false statements in the Defamatory Posts include, among others:

**The May 22, 2016 Post**

a.    "almost all 'Biggest Loser' contestants regain massive amounts of weight…"

b.    "[Dr. H] encouraged contestants to take street drugs while starving themselves and to lie about how much weight they were losing."

c.    What's missing from a recent study by Dr. Kevin Hall at the National Institutes of Health ("NIH") (done in collaboration with Dr. H) is "any examination of the show's secret and brutal tactics, which include providing illicit drugs to contestants and submitting them to questionable medical exams

15

by the show's resident doctor, Rob Huizenga, known as 'Dr. H'."

d.  "'People were passing out in Dr. H's office at the [Biggest Loser season 2] finale weigh-in,' …'[o]n season [2], five people had to be rushed to the hospital.  [Dr. H] knew exactly what we were doing and never tried to stop it.'"

e.  "Many contestants return with grave medical issues they never had before.  "

f.  Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating "'I felt jittery and hyper'…'I went and told the sports medicine guy.  The next day, Dr. H gave us some lame explanation of why they got added to our regimen and that it was up to us to take them…People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do [*sic*] to fat people to make them lose weight. I feel like we got raped, too.'"

g.  "Dr. Rob Huizenga … urged contestants to take meds and go hungry."

h.  "Once eliminated, all contestants go home and are expected to keep losing weight, with no support from the show."

i.   "As for Huizenga's participation in the NIH study, Dr. Freedhoff is flummoxed.  'Dr. Huizenga has said things that challenge my understanding of obesity in general,' he says. 'He has a history of making rather ridiculous statements…plus the defense of the techniques on the 'The Biggest Loser' as do-able.  It's the worst thing to happen to sensible weight loss, ever.'"

16

**The First May 23, 2016 Post**

j.   "contestants were encouraged to go to extreme lengths to shed pounds, and five people were taken to the hospital in [season 2 of the Biggest Loser] after passing out."

k.   "Joelle Gwynn, of Season 7, said of the show's doctor, Rob Huizenga, told them it was 'up to us to take [the illicit drugs].'"

**The Second May 23, 2016 Post**

l.   "'The Biggest Loser' tried to boost its ratings by pushing boring contestants to ingest baking soda so that they would retain water and gain weight and get booted off…"

m.   "the NBC show's doctor, Robert Huizenga, once told [a former contestant] and several other contestants they needed to take two tablespoons of baking soda to battle dehydration.  But it was just a ruse to eliminate them and make room for 'more exciting' participants…"

47.   The false statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower his reputation in the community and to deter others from associating or dealing with Plaintiff and potentially may even lead to the termination or suspension of his medical license.

48.   The false statements constitute libel *per se* because the false statements disparage and discredit Plaintiff in the way of his profession and trade as a doctor and medical professional and falsely impute the commission of a criminal offense to Plaintiff.

49.   Furthermore, Defendants' statements involve materially false implications.

17

50.     The statements made by Defendants were false, and no applicable privilege or authorization protecting the statements can attach to them.  The statements set forth above do not involve matters of public concern.

51.     Defendants published the false statement to third parties, including but not limited to the viewers and/or readers of *The New York Post* and/or www.nypost.com, Show contestants, and third parties with existing and/or potential business relationships with Dr. H, with knowledge of falsity of the statements and/or reckless disregard for the truth of the statements.

52.     Plaintiff has been seriously damaged as a direct and proximate cause of the falsity of the statements made by Defendants in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business and duties as a medical professional.  Because the statements were widely disseminated on the Internet, they were also likely and intended to hold the Plaintiff up to ridicule and to damage his social and business relationships.

53.     The above-referenced published statements constitute egregious conduct constituting malice.  Defendants' acts were willful and malicious.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to defendants' making of the above-referenced defamatory statements, in an amount to be determined at trial.

54.     Plaintiff has complied with all notice requirements prior to filing this action by informing Defendants of their defamatory statements and requesting a retraction, in letters dated May 31, 2016, and allowing Defendants a reasonable amount of time to make such retraction.

## THIRD CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Relations)

55.     Plaintiff hereby repeats and realleges each and every allegation of Paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.     Plaintiff has, and had, valid business relationships with various third parties. These third parties include but are not limited to: (a) Plaintiff's patients, (b) Plaintiff's expected patients, (c) producers and/or studios for TV shows and projects on which Plaintiff has an ongoing and/or recurring role as writer, correspondent, advisor or doctor (including but not limited to ABC, NBC, Bravo, MTV, Oxygen, Spike TV, FOX, CW Network, Discovery Network, Univision, CBS, WE TV, KTLA, National Geographic, Netflix, and TLC); (d) third parties with whom Plaintiff has valid expected business relationships, based on his expertise and qualifications as a health expert (including but not limited to current and expected patients, ABC, NBC, Bravo, MTV, Oxygen, Spike TV, FOX, CW Network, Discovery Network, Univision, CBS, WE TV, KTLA, National Geographic, Netflix, and TLC); and (e) third parties with whom Plaintiff has any valid existing and/or expected business relationships for endorsements.  These business relationships were reasonably likely and probable to result in Plaintiff's economic advantage.

57.     Defendants had knowledge of these valid business relationships and expectancies.

58.     Defendants' intentionally interfered with these valid business relationships and expectancies, inducing and/or causing the termination of valid relationships and expectancies, including but not limited to, Dr. H's role on The Biggest Loser, a role for Dr. H as a medical expert on a national network news show, and a production deal for a reality TV show based upon

www.truthfulbrain.com, by making false, fabricated, fictitious and outright libelous statements about Dr. H in the Defamatory Posts.

59.     Defendants' conduct has intentionally interfered with these valid business relationships and expectancies, inducing and/or causing the termination of the valid relationships and expectancies by making false, fabricated, fictitious and outright libelous statements about Dr. H and his treatment of past contestants on the Show and the revocation of Dr. H's medical license.

60.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

61.     Defendants' actions constitute egregious conduct constituting malice or other dishonest, unfair or improper means.  Defendants' acts were willful and malicious.  Plaintiff demands punitive damages relating to Defendants' conduct in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

(a) An award of damages to Plaintiff in an amount to be determined at trial but believed to be in excess of $75,000;

(b) An award of punitive damages to Plaintiff in an amount to be determined at trial;

(c) An order requiring Defendants to make a public retraction of the false

statements;

(d) An order granting preliminary and permanent injunctive relief to prevent
Defendants from making the same or further defamatory statements about
Plaintiff; and

(e) An award of such other and further relief as the Court may deem just and
proper.


Dated: March 23, 2017                          Respectfully submitted,


                                               By: */s/ Charles Harder*
                                               Charles J. Harder, Esq.
                                               HARDER MIRELL & ABRAMS LLP
                                               132 S. Rodeo Drive, Fourth Floor
                                               Beverly Hills, California 90212
                                               Tel. (424) 203-1600


                                               By: */s/ Mark J. Rosenberg*
                                               Mark J. Rosenberg, Esq.
                                               TARTER KRINSKY & DROGIN LLP
                                               1350 Broadway
                                               New York, NY 10018
                                               Tel. (212) 216 - 1127

                                               *Counsel for Plaintiff*