UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT HUIZENGA,<br><br>      Plaintiff,<br><br>   v.<br><br>NYP HOLDINGS, INC. d/b/a the *New York Post*, JOELLE GWYNN and DOES 1-20,<br><br>      Defendants. | No. 17-CV-2113 |

**OPPOSITION TO DEFENDANT JOELLE GWYNN'S MOTION TO DISMISS**

            **TARTER KRINSKY & DROGIN LLP**
            Mark Rosenberg
            1350 Broadway
            New York, New York 10018
            (212) 216-1127

            **HARDER LLP**
            Charles Harder
            132 S. Rodeo Drive, Fourth Floor
            Beverly Hills, California 90212
            (424) 203-1600

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     DR. HUIZENGA'S SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES ACTUAL MALICE. ............................................................................ 3

III.    DR. HUIZENGA ADEQUATELY ALLEGES THAT THE DEFAMATORY STATEMENTS ARE "OF AND CONCERNING" HIM. ..................................... 6

IV.     THE STATEMENTS ALLEGED BY DR. HUIZENGA ARE NOT NON-ACTIONABLE OPINIONS. .............................................................................. 8

V.      THE TORTIOUS INTERFERENCE CLAIM IS ADEQUATELY PLEADED. ................ 9

VI.     SHOULD ANY PORTION OF THE MOTION TO DISMISS BE GRANTED, DR. HUIZENGA SHOULD BE GRANTED LEAVE TO AMEND. .............................. 10

VII.    CONCLUSION .................................................................................................. 11

**TABLE OF AUTHORITIES**

**Cases**

*AIDS Counseling & Testing Centers v. Group W. Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990) .................................................................................................................................. 8

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015) ........................................................................ 3, 5

*Brian v. Richardson*, 660 N.E.2d 1126 (N.Y. 1995) ........................................................................ 9

*Church of Scientology Int'l v. Time Warner Inc.*, 806 F.Supp. 1157 (S.D.N.Y. 1992) .................... 7

*Cimino v. Glaze*, 228 F.R.D. 169 (W.D.N.Y. 2005) ..................................................................... 10

*Diario El Pais, S.I. v. Nielsen Co.*, 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ........................... 5

*Diaz v. NBC Universal, Inc.* 536 F.Supp.2d 337 (S.D.N.Y. 2008) .................................................. 6

*Egiazaryan v. Zalmayev*, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ........................................... 5

*Flamm v. American Ass'n of University Women*, 201 F.3d 144  (2d Cir. 2000) ............................. 9

*Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1980) ......................................................................... 7

*La Luna Enterprises v. CBS Corp.*, 74 F.Supp.2d 384 (S.D.N.Y. 1999) ......................................... 7

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ....................................................................... 8

*Naantaanbuu v. Abernathy*, 746 F.Supp. 378 (S.D.N.Y. 1990) ...................................................... 7

*Orenstein v. Figel*, 677 F.Supp.2d 706 (S.D.N.Y. 2009) ................................................................ 5

I.      INTRODUCTION

This action arises out of three articles published by defendant NYP Holdings, Inc. d/b/a/ *New York Post* ("NYP") containing false and defamatory statements about Dr. Huizenga. These articles quote false statements by defendant Joelle Gwynn ("Ms. Gwynn") accusing Dr. Huizenga of providing her, and other contestants of the television series, *The Biggest Loser*, illegal drugs. Nothing could be further from the truth.

Dr. Huizenga is a world renowned health expert and esteemed sports doctor who advocates for safe and effective weight loss methods. Dr. Huizenga championed his exercise and diet-based, non-surgical, non-drug approach to combating obesity as a medical consultant for 17 seasons of the *The Biggest Loser*. The safety and well-being of contestants on *The Biggest Loser* have always been of the utmost importance to Dr. Huizenga. Ms. Gwynn's outrageous accusations, which resulted in the cancellation of *The Biggest Loser* and Dr. Huizenga losing two other opportunities on television, are particularly egregious given Dr. Huizenga's strict life-long anti-drug beliefs and strict anti-drug policy on *The Biggest Loser*, where he did not even permit contestants to take legal, over-the-counter caffeine pills or drink more than one cup of coffee, much less illegal drugs.

Unlike her co-defendant, NYP (who answered), Ms. Gwynn has filed a meritless motion to dismiss in a transparent attempt at delay, and driving up Dr. Huizenga's costs of litigation. Ms. Gwynn's motion should be denied.

Dr. Huizenga has sufficiently pleaded actual malice because his claims against Ms. Gwynn all concern statements that she made based allegedly on her own personal knowledge of what allegedly happened to her. If she stated that Dr. Huizenga drugged her when in fact he did

1

not, then *ipso facto* she knew that her statement was false when she made it.

Dr. Huizenga also has sufficiently alleged that the statements were "of and concerning" him. Ms. Gwynn's argument on this issue is nothing more than a claim that a defamatory statement cannot be "of and concerning" someone unless it specifically mentions him by name. But that is not the law. Dr. Huizenga is publicly credited as the medical consultant for *The Biggest Loser*, and was closely associated with and appeared on the show. Therefore, Ms. Gwynn's statements that claim the show's medical team supplied drugs to contestants are "of and concerning" Dr. Huizenga and do harm to his professional reputation, whether or not the statements specifically identify him by name. Applicable law is consistent, as discussed herein. In addition, Ms. Gwynn concedes that some of the defamatory statements do name Dr. Huizenga.

None of the statements alleged to be defamatory are non-actionable opinions. The statement Ms. Gwynn singles out, comparing Dr. Huizenga to Bill Cosby drugging and raping women, is making a **factual** claim that Dr. Huizenga drugged her in a manner similar or analogous to the way Mr. Cosby allegedly drugged women. False statements of fact are actionable even if they are embedded within editorial commentary, analogies, opinions or rhetoric—the doctrine making pure opinions non-actionable does not apply to the statements at issue.

Dr. Huizenga also has sufficiently pleaded tortious interference. Dr. Huizenga's complaint alleges not merely reputational harm, but also that the publication of Defendants' statements caused bad publicity which resulted in *The Biggest Loser* being cancelled after 17 successful seasons, and thereby Dr. Huizenga losing his role on the show, and also losing two other specific television engagements. This is an independent claim that Dr. Huizenga can win

2


even if he loses on a defamation theory. For example, assuming *arguendo* that Defendants' defamatory statements did no damage to Dr. Huizenga's reputation (which could, if established by the evidence, result in Dr. Huizenga losing his defamation claim), the false statements still created a temporary storm of bad publicity that resulted in *The Biggest Loser* being cancelled and Dr. Huizenga losing lucrative employment. Thus, Dr. Huizenga's tortious interference claim is not duplicative of his defamation claim, but rather stands on its own.

Ms. Gwynn likewise is incorrect that Dr. Huizenga's tortious interference claim is not specifically pleaded. Dr. Huizenga identifies the specific business opportunities at issue (his continuing role on *The Biggest Loser*, employment as a medical consultant on another NBC show, and a separate reality television show), and alleges that Ms. Gwynn intentionally made false statements for the purpose of harming Dr. Huizenga's business opportunities. It is of no importance that Ms. Gwynn's statements were made to the *New York Post* and not NBC—so long as she made such statements intending to injure Dr. Huizenga's business relationships, the elements of the tort are satisfied.

The motion should be denied.

## II.  DR. HUIZENGA'S SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES ACTUAL MALICE.

Even assuming *arguendo* that Dr. Huizenga is a public figure, his Second Amended Complaint carefully and completely alleges actual malice. The standard for pleading actual malice is stated in *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). In *Biro*, the Second Circuit held that "a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice". *Id.* Accordingly, all that is required is that the

3

complaint allege "plausible grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice". *Id.* at 546. Examples the Second Circuit gives of meeting the minimal standard include alleging an article does not identify a source (thus allowing a jury to infer that it was fabricated), alleging that there were obvious reasons to doubt the veracity of the report, or alleging that the statements themselves were inherently improbable. *Id.* at 545.

Dr. Huizenga's allegations against Ms. Gwynn easily meet the Second Circuit's minimal standard.  Ms. Gwynn's defamatory statements concern conduct that she alleges she was personally involved in and personally witnessed (*i.e*., that Dr. Huizenga drugged her).  The Second Amended Complaint alleges the following defamatory statement made by Gwynn: "Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating "'I felt jittery and hyper'…'I went and told the sports medicine guy.  The next day, Dr. H gave us some lame explanation of why they got added to our regimen and that it was up to us to take them…People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do [sic] to fat people to make them lose weight.  I feel like we got raped, too.'" *Second Amended Complaint* ¶ 29(e).  This is a claim that Dr. Huizenga drugged her or ratified some other staffer's action in drugging her.  If the statement is false, and Dr. Huizenga actually did not do this, and these conversations never happened, then Ms. Gwynn's statement would necessarily be made with personal knowledge of its falsity, easily meeting the standard for actual malice.

Similarly, another pleaded defamatory statement is:  "Joelle Gwynn, of Season 7, said of [sic] the show's doctor, Rob Huizenga, told them it was 'up to us to take [the illicit drugs].'" *Id.*

4

¶ 29(g). Again, if this statement is false, and this conversation never happened, then Ms. Gwynn's statement that it did happen was necessarily made with actual malice, as she would have personal knowledge of the fact that the statement was false. The remainder of Ms. Gwynn's statements in the articles are similar—by their very nature, if they are false, she made them with actual malice.

The cases cited by Ms. Gwynn do not involve statements of facts that the defendant would necessarily have personal knowledge of and, thus, additional allegations of actual malice were necessary. *Biro*, 807 F.3d at 543 (allegation that journalist failed to report facts properly that he obtained from sources and had no personal knowledge of); *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (allegation that defendant's assertions that plaintiff engaged in illicit business activities were defamatory; defendant had no personal involvement in those business activities); *Orenstein v. Figel*, 677 F.Supp.2d 706, 711 (S.D.N.Y. 2009) (allegation that plaintiff billed for work he did not perform; defendant had no personal knowledge of what work plaintiff did or did not perform); *Diario El Pais, S.I. v. Nielsen Co.*, 2008 WL 4833012, at *6–7 (S.D.N.Y. Nov. 6, 2008) (allegation that website traffic data report was defamatory where defendant took specific steps to generate accurate numbers and inadvertently published erroneous data). But in this case, if Dr. Huizenga proves that he did not administer illegal drugs to Ms. Gwynn, or turn a blind eye to others on staff doing so, then Ms. Gwynn has knowingly made false statements.

Thus, the Second Amended Complaint sufficiently alleges actual malice.

5

## III. DR. HUIZENGA ADEQUATELY ALLEGES THAT THE DEFAMATORY STATEMENTS ARE "OF AND CONCERNING" HIM.

The issue of whether statements are "of and concerning" the plaintiff in a defamation case is a **jury question** unless "the statements are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff". *Diaz v. NBC Universal, Inc.* 536 F.Supp.2d 337, 342 (S.D.N.Y. 2008). This is a high bar for Ms. Gwynn to clear, and she has not cleared it.

Ms. Gwynn alleges that the following statements were not "of and concerning" Dr. Huizenga, as a matter of law: "Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating 'I felt jittery and hyper.'"; "I went and told the sports medicine guy."; and "People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do to fat people to make them lose weight. I feel like we got raped, too." A jury could reasonably find that all of these statements were "of and concerning" Dr. Huizenga, the show's on-camera (and off-camera) medical doctor.

First, these statements were made in the same interview in which Ms. Gwynn specifically identified Dr. Huizenga, by name, in other statements alleging the same wrongful acts. Thus, it is fanciful for Ms. Gwynn's counsel to argue that a jury could not reasonably conclude that she was referring to Dr. Huizenga when she spoke of the show's medical staff drugging her. A jury certainly can make that reasonable finding.

Second, Dr. Huizenga, as the medical doctor on the show and Ms. Gwynn's physician, would have been responsible for the actions of others on the show, especially since under Ms. Gwynn's version of the facts, he ratified and endorsed the alleged drugging of Ms. Gwynn. Accordingly, even if she is not alleging that Dr. Huizenga personally handed her the pills, she is

6

definitely claiming that Dr. Huizenga is responsible for the pills being administered to her and that he urged her to take them. Not only could a reasonable jury conclude that she was talking about Dr. Huizenga—it would be **un**reasonable for a jury to conclude that she was **not** talking about him.

Pursuant to applicable law, a statement does not have to identify the plaintiff by name to be "of and concerning" him, and extrinsic evidence may be used to meet this element of defamation. *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980) (reversing dismissal and holding it was a **jury question** whether fictional character was "of and concerning" plaintiff even though plaintiff's name was never used in the work); *Church of Scientology Int'l v. Time Warner Inc.*, 806 F.Supp. 1157, 1163-64 (S.D.N.Y. 1992) (oblique references to Church of Scientology sufficient to satisfy "of and concerning" requirement even though the defamatory statements did not specifically reference the Church by name); *Naantaanbuu v. Abernathy*, 746 F.Supp. 378, 382 (S.D.N.Y. 1990) (motion to dismiss must be converted to summary judgment motion because plaintiff has the right to adduce extrinsic evidence to show that reference in defamatory statement to an unnamed "friend" of Martin Luther King, Jr. referred to him). **"[A] defamed person need not be named in the defamatory words** if the communication as a whole contains sufficient **facts or references** from which the injured person may be determined by the persons receiving the communication." *La Luna Enterprises v. CBS Corp.*, 74 F.Supp.2d 384, 391 (S.D.N.Y. 1999) (emphasis added).

Ms. Gwynn's statements are naturally read as being of and concerning Dr. Huizenga. At the very least, it is a jury question, and dismissal at this stage would be reversible error, pursuant to the case law cited above.

Ms. Gwynn offers only one case to support her argument, a Fourth Circuit case holding that a defamatory statement about an organization does not necessarily defame all of the employees. *AIDS Counseling & Testing Centers v. Group W. Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990). While this is a correct statement of law, it has no application here: Dr. Huizenga is not simply contending that Ms. Gwynn made statements about *The Biggest Loser* as an enterprise that reflected badly on him because he worked for the show. Rather, he contends that she specifically made defamatory statements about him, alleging, falsely, that he administered or supervised and ratified the administration of illegal drugs to her. That claim is in no way barred by the Fourth Circuit holding of *AIDS Counseling & Testing Centers*.

## IV. THE STATEMENTS ALLEGED BY DR. HUIZENGA ARE NOT NON-ACTIONABLE OPINIONS.

Ms. Gwynn argues that when she analogized Dr. Huizenga to Bill Cosby (who is alleged to have drugged women and then criminally sexually assaulted them) she was merely giving a protected "opinion". This is a blatant misuse of the opinion doctrine, which does not protect "opinions" that embed false statements of fact.

The U.S. Supreme Court has long held that there is no blanket shield for "opinions" that embed false statements of fact. "We are not persuaded that, in addition to these protections, an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment. The dispositive question in the present case then becomes whether a reasonable **factfinder** [*i.e.,* juror] could conclude that the statements [at issue] imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding [the false statement at issue in the case]." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990)

8

(emphasis added). The *Milkovich* standard applies here—the issue is simply whether a reasonable factfinder (juror) could conclude that in comparing Dr. Huizenga to Bill Cosby, Ms. Gwynn was implying that Dr. Huizenga administered illegal drugs to Ms. Gwynn. Obviously a reasonable juror could so conclude.

Ms. Gwynn can find no refuge under the New York state law opinion doctrine. Under New York law, whether an "opinion" is actionable turns on "whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff". *Flamm v. American Ass'n of University Women*, 201 F.3d 144, 153 (2d Cir. 2000) (calling a lawyer an "ambulance chaser" is a statement of fact, not opinion) (citing *Brian v. Richardson*, 660 N.E.2d 1126, 1130 (N.Y. 1995)). A reasonable reader would read Ms. Gwynn's statement as conveying the claim that she was illegally drugged either by Dr. Huizenga himself, at his direction, or under his supervision and with his approval.

Ms. Gwynn changes the subject by stating that nobody could conclude from the statement that she is actually claiming that Dr. Huizenga raped her. However, Dr. Huizenga is not claiming that she accused him of rape—he is claiming that she accused him of administering illegal drugs to her. The fact that the "rape" portion of the statement may be rhetorical hyperbole does not mean the "drug" part of the statement, which obviously embeds a factual claim, is also hyperbole. It is not.

## V. THE TORTIOUS INTERFERENCE CLAIM IS ADEQUATELY PLEADED.

Finally, Ms. Gwynn's attacks on Dr. Huizenga's tortious interference claim are without merit. First, the claim is not duplicative of the defamation claims. The defamation claims, of course, allege harm to Dr. Huizenga's reputation. However, even if Ms. Gwynn's statements are

9

found to have done no permanent damage to Dr. Huizenga's professional reputation, they still created a controversy that caused the network not to renew *The Biggest Loser* for Season 18, at a critical time when the network was in the process of making that decision and, as a result, caused Dr. Huizenga to lose his employment with the show, and also to lose an upcoming role on another network show, and on another reality television show. The tortious interference claim, therefore, is not duplicative of the defamation claim.

Dr. Huizenga also has specifically alleged damage as a result of Ms. Gwynn's tortious interference. Dr. Huizenga did not file a complaint that merely stated he lost unspecified business or inchoate opportunities; rather, Dr. Huizenga alleged that he lost three specific economic opportunities—his existing engagement on *The Biggest Loser*, an upcoming role on another network show, and a reality television show. This is exactly the sort of specific allegation of damages that is considered sufficient to state a claim for tortious interference.

Finally, Dr. Huizenga has alleged conduct directed at him. Ms. Gwynn cites no authority that statements made to a journalist cannot support a claim for tortious interference. Ms. Gwynn, a contestant on *The Biggest Loser*, obviously was aware of Dr. Huizenga's relationship with the show; if she made the statements in the hope that they might interfere with his continuing relationship with the show, that would constitute tortious interference.

## VI.   SHOULD ANY PORTION OF THE MOTION TO DISMISS BE GRANTED, DR. HUIZENGA SHOULD BE GRANTED LEAVE TO AMEND.

If any portion of this motion is granted, Dr. Huizenga should be afforded the opportunity to amend his complaint to allege additional facts. *Cimino v. Glaze*, 228 F.R.D. 169, 171 (W.D.N.Y. 2005) (denials of leave to amend should be rare, and should only occur where

10

amendment is futile or there has been unreasonable delay).

### VII. CONCLUSION

For the foregoing reasons, defendant Joelle Gwynn's motion to dismiss should be denied in its entirety. If any part of the motion is granted, Dr. Huizenga should be granted leave to amend.

Dated:  March 29, 2018                                  Respectfully submitted,

                                                        TARTER KRINSKY & DROGIN LLP

                                                        By: */s/ Mark Rosenberg*
                                                        Mark J. Rosenberg, Esq.
                                                        1350 Broadway
                                                        New York, NY 10018
                                                        Tel. (212) 216 – 1127

                                                        Charles J. Harder, Esq.
                                                        HARDER LLP
                                                        132 S. Rodeo Drive, Fourth Floor
                                                        Beverly Hills, California 90212
                                                        Tel. (424) 203-1600


                                                        *Counsel for Plaintiff Dr. Robert Huizenga*