# MINTZ & GOLD LLP
### ATTORNEYS AT LAW

600 THIRD AVENUE
25TH FLOOR
NEW YORK, NEW YORK 10016

TELEPHONE (212) 696-4848
FACSIMILE (212) 696-1231

www.mintzandgold.com

July 16, 2018

Via ECF and Federal Express
Hon. Gabriel W. Gorenstein
U.S. District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

Re:   *Huizenga v. NYP Holdings, Inc., et al.*, Index No. 17 Civ. 2113 (LTS) (GWG)

Dear Judge Gorenstein:

This firm, along with Davis Wright Tremaine LLP, represents defendant NYP Holdings, Inc. ("NYP") in this case. Because Davis Wright Tremaine LLP has a conflict as to non-party NBCUniversal Media, LLC ("NBC"), this firm is counsel as to the subpoena served on NBC (the "Subpoena"), a copy of which is attached hereto as Exhibit 1.[1] Unfortunately, NBC's response to the Subpoena – consisting of a total production of fifty-three pages and an opaque privilege log with non-descript descriptions – is insufficient. Despite repeated good-faith attempts to resolve this dispute, we write pursuant to Rule 2.A of Your Honor's Individual Practices and Local Rule 37.2 to request a conference with the Court.

### Background and Rule 2.A compliance

As the Court is aware, this defamation action concerns three articles published by the *New York Post*, which concerned the weight loss competition reality television program *The Biggest Loser* (the "Show"), reported experiences of contestants during the Show, and reported the difficulties former contestants experienced following their participation in the Show (the "Articles"). Such Articles were based on reliable sources, including firsthand accounts from former contestants, and were published subsequent to similar news reports in other publications.[2]

In addition to the discovery currently ongoing with respect to separate issues and parties, *see* Dkt. No. 65, NYP is seeking information directly relevant to plaintiff Robert Huizenga's ("Plaintiff") allegation of falsity in his defamation claims, as well as to Plaintiff's damages claims alleging that the Show was cancelled (and valid business relationships were terminated) due to the publication of the Articles. NBC – the entity which televised the Show, which worked

---

[1] A similar subpoena, served by defendant Joelle Gwynn on NBC on March 15, 2018, remains outstanding.
[2] *See, e.g.*, Gina Kolata, *After 'The Biggest Loser,' Their Bodies Fought To Regain Weight*, N.Y. Times (May 2, 2016), https://nyti.ms/21gWqE5.

closely with the Los Angeles-based independent production companies that produced the Show, and which ultimately decided to cease airing the Show – is in position to (i) establish the substantial truth of the statements of fact in the Articles concerning Plaintiff and/or the Show and (ii) establish why the Show was not renewed. Despite possessing such information (and despite being reminded that all such information can be produced pursuant to the protective orders in this action), NBC has failed to fully comply with the Subpoena.

After service of the Subpoena on May 3, 2018, NBC responded by providing a general laundry-list of boilerplate objections on May 17, 2018 (the "Letter Objections," a copy of which is attached hereto as Exhibit 2). During a May 21, 2018 telephone call, Andrew Jacobs, counsel for NBC, directed NYP to a separate document production (of thirteen pages) and privilege log produced in response to a subpoena served on NBC by Plaintiff (the "Initial Log," a copy of which is attached hereto as Exhibit 3).[3] Leaving aside the paucity of NBC's thirteen-page production to Plaintiff, NYP informed NBC that its Initial Log did not describe the nature of the withheld documents, as is required pursuant to FRCP 45(e)(2)(A)(ii). Moreover, after conceding that its Letter Objections were not sufficient, NBC agreed to provide responses and objections to each of the specific requests set forth in NYP's Subpoena.

NBC's new Responses and Objections, served on June 8, 2018 (the "Responses and Objections," a copy of which is attached hereto as Exhibit 4), (i) again referred NYP to NBC's thirteen-page production to Plaintiff, as well as to the Initial Log (despite NYP's stated concerns as to the sufficiency thereof), (ii) agreed to produce specific categories of documents but only for two out of the seventeen seasons of the Show; and (iii) refused to produce certain documents absent a meet-and-confer. As such, on June 19, 2018 (from approximately 10:00 a.m. to 11:30 a.m.), a telephonic meet-and-confer was conducted between Steven G. Mintz and Timothy H. Wolf, on behalf of NYP, and Andrew Jacobs, on behalf of NBC. Although the conversation continued on June 21, 2018 (for approximately one hour) and despite NBC agreeing to provide a new privilege log and make a limited document production on or before June 29, 2018, the parties remained at an impasse with respect to numerous critical issues. As such, NYP informed NBC that, following NBC counsel's planned vacation over the July 4th holiday, NYP would be requesting a conference with the Court.

Having now received and reviewed NBC's June 29, 2018 production of only fifty-three pages, along with a "new" privilege log that consists of 268 non-descript entries (the "New Log," a copy of which is attached hereto as Exhibit 5[4]), NYP informed NBC, in a July 13, 2018 email and again in a July 16, 2018 telephone call, that it remains apparent that the parties are at impasse and the Court's assistance is required. As set forth below, NBC's response to the Subpoena amounts to little more than (i) NBC withholding critical documents based on overly-broad and underly-described privilege designations; (ii) NBC, a non-party, unilaterally deciding on what information is relevant to Plaintiff's claims and NYP's defenses (and, based on its own

---

[3] Although the Initial Log is stamped as "confidential," NBC has agreed, for the purposes of presenting this dispute to the Court, to withdraw such designation as to that document.

[4] The New Log also includes a "confidential" stamp. However, as noted above regarding the Initial Log, NBC has agreed to withdraw such designation for the purposes of this dispute.

relevancy determination, producing only fifty-three pages); and (iii) in some instances, NBC refusing to produce, or even conduct a search for, the requested information.[5]

### Documents concerning the distribution, offering, possession or use of Drugs

Subpoena Request Nos. 4, 5, 6 and 7 seek information at the very heart of this action: whether and to what extent contestants were provided or otherwise used Drugs (as defined in the Subpoena) during the Show. In order to gather evidence regarding the "substantial truth" of such allegations in the Articles, NBC is an obvious source of such information. However, during the meet-and-confers, NBC's position was clear: it refused to produce documents concerning Drugs. Instead, based on what was (and, more importantly, what was not) included in NBC's fifty-three page production, it appears that the underlying non-privileged facts or complaints concerning Drugs have been designated as privileged by NBC – solely because counsel later received, reviewed and/or commented upon such documents as part of a so-called "investigation of allegations of the provision and/or use of Drugs on the Biggest Loser[.]"[6]

*First*, NBC's reliance on the "Attorney Work Product" designation for such "investigation" documents is misplaced. NBC "bears the burden of establishing that the documents in question were prepared principally or exclusively to assist in anticipated or ongoing litigation." *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 462 (S.D.N.Y. 1996). Nowhere in its Responses and Objections, nor in its New Log, does NBC state that the "investigation" documents were prepared in anticipation of threatened litigation. Rather, such documents, according to the New Log, pertained to "actions considered in response to such allegations" about the "provision and/or use of Drugs."[7] It is well-established that documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation" are not protected by the work product doctrine. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). In fact, this Court held that "[a] party may not 'insulate itself from discovery by hiring an attorney to conduct' an investigation that otherwise would not be accorded work product protection." *Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96, 109 (S.D.N.Y. 2007) (Gorenstein, J.), *quoting U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services, Co., et al.*, 2000 WL 744369, at *12 (S.D.N.Y. June 8, 2000) ("[s]imply because an attorney participated in and supervised [an investigation] does not transform investigative documents into work product."). As such, the use of counsel to discuss and "investigat[e]" improper behavior on the Show does not inoculate the underlying facts or the documents created with respect thereto.

*Second*, with respect to many of the documents NBC seeks to protect solely under "Attorney-Client Privilege," NBC does not meet its burden of establishing that the privilege has

---

[5] Although Rule 2.A of Your Honor's Individual Practices permits an application for "formal briefing" on discovery disputes, there is currently a September 14, 2018 discovery deadline. The documents sought from NBC are necessary for NYP to, *inter alia*, adequately conduct depositions. As such, while the deficiencies in NBC's response to the Subpoena merit a full briefing (and necessitated NYP briefly exceeding Your Honor's preference for a five-page submission), a timely briefing schedule may not be practical under the current discovery deadline. In the event that the deadline is adjourned, NYP respectfully reserves the right to request "formal briefing."

[6] *See* Exh. 5, at Entry Nos. 1-137.

[7] *See* Exh. 5, at Entry Nos. 21-27, 39-84, 86-88, 91-93, 101-105, and 107-137.

not been waived. "Disclosure of attorney-client communication to a third party, who is not an agent or employee of counsel, or communications with an attorney in the presence of a third party vitiates the confidentiality required for asserting the privilege." *Delta Fin. Corp. v. Morrision*, 820 N.Y.S.2d 745 (2006). Many of the documents designated as privileged by NBC are communications involving outside third parties: the Show's production companies, Reveille LLC and Endemol Shine North America.[8]

*Finally*, should NBC now seek to provide explanations to establish the propriety of the New Log's privilege designations, such efforts – after already causing needless court intervention – should not be countenanced. Rule 45(e)(2)(A)(ii) requires that a subpoena recipient claiming privilege must "describe the nature of the withheld documents, communications, or tangible things that, without revealing information itself privileged or protected will enable the parties to assess the claim." NBC, having already been afforded an opportunity to improve upon its deficient Initial Log, simply copied-and-pasted the same handful of "descriptions" throughout the 268 entries and, in many instances, unilaterally redacted relevant portions of the "Email Subject" line.[9] As such, based on such bald and insufficient descriptions, any privilege alleged by NBC should be deemed waived. *See, e.g., S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 163 (S.D.N.Y. 2014); *Au New Haven, LLC v. YKK Corp.*, 2018 WL 333828, at 2 (S.D.N.Y. Jan. 5, 2018).

### Documents referring to the Articles

Subpoena Request No. 15 seeks NBC's documents or communications referring to the Articles, which would necessarily be relevant in determining the "substantial truth" of the allegations contained in the Articles. However, during the meet-and-confers, NBC took the same position as outlined above: it refused to produce such documents. Instead, NBC relied upon the New Log's blanket classification of "Attorney-Client Privilege" for documents "regarding [a] response to the Articles."[10]

The lack of adequate description makes it impossible to determine, for example, whether NBC can meet its burden of establishing that the designated communications were "primarily or predominantly of a legal character." *Rossi v. Blue Cross and Blue Shield*, 542 N.Y.S.2d 508, 511 (1989). In fact, characterizing the documents as "regarding [a] response" to the Articles suggests that such communications were intended, at least in large part, for public relations purposes. However, as noted by this Court, "[c]ase law makes clear that '[a] media campaign is not a litigation strategy.'" *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013) (Gorenstein, J.), *quoting Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) ("Some attorneys may feel it is desirable at times to conduct a media campaign, but that does not transform their coordination of a campaign into legal advice.").

---

[8] *See* Exh. 5, at Entry Nos. 9, 31-34, 37-41, 43-44, 46-65, 68-84, 86-88, 91-93, 101-105, 107-111, 123-128, and 136-137.
[9] *See* Exh. 5, at Entry Nos. 1-30, 63, 71, 75, 80-82, 85, 89-97, 99-101, 106, 110-122, 127-138, 142-145, 147-182, 206, 225-226, and 259-265.
[10] *See* Exh. 5, at Entry Nos. 138-256.

**Documents regarding Baking Soda, fainting, hospital trips or medical complaints**

Subpoena Request Nos. 8, 9, 10 and 14 seek documents regarding contestants being provided Baking Soda (as defined in the Subpoena), contestants fainting, contestants being taken to the hospital (or other medical facility) and/or complaints regarding medical exams and services – all topics directly relevant to the statements at issue in the lawsuit. During the meet-and-confers, NBC stated that it would use unilaterally selected search terms to locate responsive documents; however, it would only produce documents concerning Seasons Two and Seven of the Show, arguing that such a narrowing was warranted because the Articles only quoted two contestants, defendant Joelle Gwynn from Season Seven and non-party Suzanne Mendonca from Season Two. NBC, without citing to any legal authority, maintained that Plaintiff's defamation claim only arose from those specific contestant's statements and, as such, only documents from their specific seasons were relevant for determining the "substantial truth" thereof.[11] Such a position is, however, unavailing.

Even a cursory review of the pleadings makes clear that, contrary to NBC's position, Plaintiff's claims are not limited solely to the specific quotes in the Articles from Ms. Gwynn and Ms. Mendonca.[12] As such, the production of documents concerning, for example, alleged complaints about medical exams provided by Plaintiff (Subpoena Request No. 14) should not be limited solely to those two former contestants and/or solely to the two seasons in which they participated.

Moreover, "[d]efendants are entitled to the discovery they seek in their efforts both to establish their defense of truth to plaintiff's defamation claims, and to defend against plaintiff's assertion of damage to his reputation." *Rivera v. NYP Holdings, Inc.*, 63 A.D.3d 469, 469 (1st Dept. 2009). For NYP to mount such defense, it is not limited to discovery only as to those specific quotes that NBC unilaterally identifies – rather, "defendants are entitled to the opportunity to demonstrate the truth of the articles *as a whole*, warranting disclosure even as to assertions in those articles that are not directly challenged in plaintiff's complaint." *Id.* (emphasis in original). As such, to the extent that NBC maintains documents responsive to Request Nos. 8, 9, 10 and 14 – from *any* season – NYP is "entitled to the opportunity to demonstrate the truth" of the Articles, which "as a whole" focused on alleged medical issues over the course of the Show's existence.[13]

---

[11] NBC took a similar position as to Subpoena Request Nos. 2 and 3, which sought all rules and policies regarding the Show. Although it was repeatedly explained that the rules for *all* seasons were relevant and necessary to, *inter alia*, determine whether and to what extent there were any changes to the rules as a result of certain allegations concerning the Show, NBC's production included only the rules for Seasons Two and Seven.

[12] In fact, in an effort to assist the meet-and-confer process, NYP provided NBC with the names of other contestants who had made similar statements about the show and NYP requested that a search be conducted for relevant documents associated with such individuals. NBC, however, refused.

[13] It also worth noting that, even as to those two seasons for which NBC did consent, NBC only produced a handful of documents responsive to Request Nos. 8, 9, 10 and/or 14. Despite the production being made pursuant to the Stipulated Confidentiality Agreement and Protective Order in this action, NBC unilaterally (and improperly) redacted certain medical information from responsive spreadsheets. As such, NYP remains unconvinced that -- even as to just Seasons Two and Seven -- NBC has conducted a good faith search for and production of documents.

### Documents concerning the cancellation or non-renewal of the Show

Subpoena Request No. 11 seeks documents concerning the non-renewal of the Show. Documents establishing NBC's reason(s) for ending the Show are highly relevant to the claim that the Articles "caus[ed] the termination of valid relationships and expectancies, including but not limited to, Dr. H's role on The Biggest Loser." *See* Dkt. No. 41, ¶ 63.

During the meet-and-confers, NBC agreed to search for documents, from November 1, 2015 until November 30, 2016, concerning the Show's non-renewal. However, such search was, upon information and belief, only conducted manually and without the use of electronic search terms on the computers of relevant custodians.

Amazingly, NBC maintains that it located *no* responsive documents and, as such, it produced *zero* documents concerning the non-renewal of the Show. It is simply not plausible that NBC cancelled a television show that ran for seventeen seasons and that was, at one point, one of NBC's highest rated programs – all without a single individual sending a single email, whether it be internal to NBC employees that previously worked on the Show or external to the production company responsible for producing subsequent seasons of the Show.

### Documents concerning the NIH Study or medical journal articles about the Show

In response to Subpoena Request Nos. 19 and 20, which seek documents concerning the NIH Study, as defined in the Subpoena, and/or concerning medical journal articles about the Show, NBC stated during the meet-and-confers that it objected on the ground that responsive documents would be produced pursuant to Request No. 11 (regarding non-renewal of the Show).[14]

However, NBC produced *zero* documents in response to Request No. 11, let alone in response to Request Nos. 19 and 20. Again, it strains all credulity that, despite the publication of a study by the renowned National Institute of Health that raised glaring concerns about a high-profile NBC program, NBC does not maintain a single document or email on this subject.

### Documents concerning Plaintiff's alleged business opportunities

Subpoena Request Nos. 22, 23 and 24 seek documents concerning Plaintiff's allegedly lost business opportunities with NBC, Paul Telegdy (the President, Alternative and Reality Group, of NBC Entertainment) or Noah Oppenheim (the President of NBC News). Such documents are relevant because, in addition to concerning Plaintiff's tortious interference with prospective economic relations claim, Mr. Telegdy and Mr. Oppenheim were identified in Plaintiff's Rule 26 Initial Disclosures as individuals likely to have discoverable information.

NBC, however, refused to conduct any search for such documents or, even as a compromise, to simply ask Mr. Telegdy or Mr. Oppenheim if they were aware of any potential business opportunities involving Plaintiff. While it is understandable that in-house counsel may have been wary of the office politics in including high-level executives in this dispute, that does not constitute sufficient grounds for failing to comply with the Subpoena.

---

[14] In an effort to assist the meet-and-confer process, NYP also proposed that a search be conducted for communications directly with the NIH and/or with a specific individual affiliated with the NIH, Dr. Kevin Hall. NBC, however, maintained that no such documents exist.

July 16, 2018
Page 7 of 7

      Accordingly, despite repeated attempts to resolve this dispute, NBC's production of fifty-three pages leaves the parties at an impasse. Ultimately, NBC possesses documents and information directly relevant to the claims and defenses in this action. Since NBC refuses to comply with its obligations under FRCP 45, NYP seeks relief from this Court.

Respectfully submitted,

Steven G. Mintz

Cc:    All parties' counsel (via ECF)
        Andrew Jacobs, counsel for non-party NBCUniversal Media, LLC (via email)