UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ROBERT HUIZENGA,

       Plaintiff,

  -v-                                                        No. 17-CV-2113-LTS-GWG

NYP HOLDINGS, INC. d/b/a the New York
Post, JOELLE GWYNN and DOES 1-20,

       Defendants.

-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Robert Huizenga ("Plaintiff") brings this action against Defendants NYP Holdings, Inc. ("the Post"), Joelle Gwynn, and Does 1-20 for defamation and intentional interference with a prospective economic relationship. On February 26, 2018, Plaintiff filed the operative Second Amended Complaint. (Docket entry no. 41 (the "SAC").) Defendant Gwynn now moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket entry no. 49.) The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a). The Court has considered carefully the parties' submissions in connection with the motion and, for the following reasons, Gwynn's motion to dismiss the Second Amended Complaint is granted.

BACKGROUND

The following recitation of relevant facts is derived from the allegations in the SAC, the well-pleaded factual content of which is taken as true for purposes of this motion. The Court also considers the Post articles attached to the SAC which, as "documents attached to the

complaint as an exhibit or incorporated in it by reference," are properly considered in the context of a Rule 12(b)(6) motion.  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Plaintiff is a sports medicine doctor who appears on the television series "The Biggest Loser" (the "Show").  (SAC ¶ 1.)  Plaintiff alleges that he is a "world renowned health expert" and "one of the most esteemed sports doctors of all time."  (Id. ¶ 1.)  Defendant Gwynn is a former contestant on the Show.  (Id. ¶ 2.)  On May 19, 2016, a reporter for the Post contacted Plaintiff's attorney for comment on statements made by Show contestants regarding, among other things, the alleged use of illegal drugs for rapid weight loss.  (Id. ¶ 25.)  The next day, Plaintiff's attorney informed the Post reporter that the statements were false.  (Id. ¶ 26.)  On May 22, 2016, the Post published an article titled "'The Biggest Loser' drugged us so we'd lose weight."  (Id. ¶ 26, Ex. A (the "May 22 Article").)  On May 23, 2016, the Post published two additional articles titled "'Biggest Loser' contestants demand NBC cancel show," (id. ¶ 28, Ex. B (the "First May 23 Article")), and "'Biggest Loser' rigged weigh-ins by forcing contestants to eat baking soda,'" (id. ¶ 28, Ex. C (the "Second May 23 Article")) (collectively, the "Articles"). Plaintiff identifies at least nine statements across the three Articles that he alleges are false and defamatory.  (Id. ¶ 29.)  With respect to Gwynn, Plaintiff's SAC identifies the following allegedly false statements:

> e. Gwynn claims that she took an illicit yellow and black pill supposedly given to her by a Show staff member, stating "'I felt jittery and hyper' . . . 'I went and told the sports medicine guy.  The next day, Dr. H gave us some lame explanation of why they got added to our regimen and that it was up to us to take them . . . People chastise Bill Cosby for allegedly offering meds to women, but it's acceptable to do [sic] to fat people to make them lose weight.  I feel like we got raped, too.'"

> g. "Joelle Gwynn, of Season 7, said of [sic] the show's doctor, Rob Huizenga, told them it was 'up to us to take [the illicit drugs].'"

(Id. ¶¶ 29(e), 29(g), the "Gwynn Statements" or "Statements.")  Plaintiff alleges that several individuals closely connected to the Show, including Plaintiff, informed the Post that contestants were not given illegal drugs.  (Id. ¶ 33.)  Quoting the May 22 Article, Plaintiff avers that he told the Post that "[n]othing could be further from the truth.  Contestants are told at the start of the show that there is zero tolerance for any weight-loss drugs.  Urine drug screens and the evaluation of serial weights are repeatedly used to flush out possible illicit use."  (Id.)  Plaintiff also alleges that the Show's producers informed the Post that they "prohibit the use of any illegal substances," and that a trainer for the Show told the Post that allegations regarding illegal drug use were "absolutely false."  (Id.)  Plaintiff alleges that "Defendants knew [their] statements to be false" at the time the Articles were published, and that the statements were made "with the intention and knowledge that they were false and were likely to harm [Plaintiff's] personal and professional reputation, and/or with reckless disregard for the truth of the statements."  (Id. ¶¶ 27-28, 30.)

## DISCUSSION

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  A court "need not accord legal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal quotations omitted).

Defamation Claim

To state a defamation claim in New York, a public figure must establish that the statements complained of were "(1) of and concerning [the plaintiff], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice." Karedes v. Ackerley Grp., Inc., 423 F.3d 107, 113 (2d Cir. 2005) (citation omitted).[1] Actual malice is a "term of art denoting deliberate or reckless falsification." Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 499 (1991). Statements are made with actual malice when they are said with the knowledge that they are false or with reckless disregard for their falsity. Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015); see also St. Amant v. Thompson, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his [statements].") At the motion to dismiss stage, a plaintiff must "plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." Biro, 807 F.3d at 546 (internal quotations omitted). The Second Circuit has noted that "[t]he hurdles to plausibly pleading actual malice" are "significant given the First Amendment interests at stake." Id. at 545.

Here, Plaintiff has failed to allege adequately that the Gwynn Statements were made with actual malice. Plaintiff's SAC asserts in a conclusory fashion that the Gwynn Statements were made "with the intention and knowledge that they were false . . . and/or with reckless disregard for the truth" (SAC ¶ 30; see also id. ¶¶ 45, 56), without alleging any facts

---

[1] Proof of actual malice is only required if the plaintiff is a public figure. Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000). In light of Plaintiff's failure to contest that he is a public figure and Plaintiff's own characterization of himself as a "world renowned health expert," the Court assumes for purposes of this motion practice, without deciding the matter, that Plaintiff is a public figure.

from which the Court could conclude that Gwynn "entertained serious doubts as to the truth" of her statements.  St. Amant, 390 U.S. at 731.  The SAC contains no allegations regarding Plaintiff's interactions with Gwynn, nor does it aver facts that would contextually support the inference that Gwynn knew her statements were false.  Plaintiff's general assertions that "Defendants knew the statements to be false at the time [the Articles] were published" (SAC ¶¶ 27-28), and that "Defendants' acts were willful and malicious," (id. ¶¶ 47, 58), are insufficient to allege plausibly actual malice on Gwynn's part.  See Biro, 807 F.3d at 544-5 ("'Naked assertions' or 'conclusory statements' are not enough . . . . Malice must be alleged plausibly in accordance with Rule 8.").

Plaintiff argues that, because the Gwynn Statements concern conduct that Gwynn personally witnessed and experienced, allegations that the Statements are false are sufficient to meet the pleading standard for actual malice.  (Docket entry no. 53, Pl. Opp. (the "Opp.") at 4.)  Plaintiff reasons that, if the Statements are proven false at trial, then they would necessarily have been made with personal knowledge of their falsity, thus satisfying the actual malice requirement.  (Id.)  While a factual finding regarding a statement's falsity may be sufficient to demonstrate actual malice in certain instances involving a defendant's personal knowledge, a plaintiff must still "identify how the defendant's statement was false to survive a motion to dismiss."  Tannerite Sports, LLC v. NBC Universal News Group, 864 F.3d 236, 245 (2d Cir. 2017).  Here, Plaintiff offers only conclusory assertions that the Articles "contain[] false statements of fact," and "involved materially false implications."  (See, e.g., SAC ¶¶ 27-28, 30, 43-44, 54-55.)  Plaintiff has not averred any facts regarding his conversations or interactions with Gwynn, or even about the existence or nature of the allegedly illicit pills, that would permit the Court to draw a plausible inference that the Gwynn Statements were untrue, such that Gwynn

acted with knowledge of their falsity when making them.  For example, Plaintiff argues that, if the conversations recounted in the Gwynn Statements never occurred, then the Statements would necessarily have been made with personal knowledge of their falsity.  (Opp. at 4.)  The SAC, however, does not allege that those conversations did not occur, nor does it allege that Gwynn was not provided with a yellow and black pill.  Nor is there any allegation that Gwynn was informed prior to her alleged statements to the Post that the pill was not an illegal drug.  Plaintiff's general allegations that he is known for his "non-drug exercise-centric fat loss approach" (SAC ¶ 14), and that he and others informed the Post "that contestants were not given illegal drugs" (id. ¶ 33), lack sufficient specificity to rebut Gwynn's assertions or to plausibly raise an inference that Gwynn's statements were inherently improbable or made with the knowledge that they were false.  Accordingly, because the nonconclusory allegations in the SAC do not plausibly plead that Gwynn's statements were made with knowledge of or reckless disregard for their falsity, Plaintiff's defamation claims with respect to Gwynn are dismissed.

Intentional Interference with a Prospective Economic Relationship

To state a claim for intentional interference with a prospective economic relationship, a plaintiff must show: (1) business relations with a third party; (2) defendants' interference with those business relations; (3) that defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the relationship.  Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994).  A claim for intentional interference with a prospective economic relationship where the injury flows entirely from harm to a plaintiff's business reputation is duplicative of a defamation claim, and is disallowed under New York law.  See Krepps v. Reiner, 588 F. Supp. 2d 471, 485 (S.D.N.Y. 2008), aff'd, 377 F.

App'x 65 (2d Cir. 2010) ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage.").

Like his defamation claim, Plaintiff's intentional interference claim principally alleges harm to Plaintiff's "social and business relationships" flowing from Gwynn's allegedly defamatory Statements. (Compare SAC ¶ 46, 57 with ¶ 63.) And, even if Plaintiff's intentional interference claim resulted in some separate non-reputational harm, as explained above, Plaintiff offers no specific factual allegations regarding Gwynn that would permit an inference that Gwynn's sole purpose in making the Statements was to harm Plaintiff or that Gwynn employed any "dishonest, unfair, or improper means." The SAC contains only conclusory assertions that Gwynn "intentionally interfered" with Plaintiff's business relationships "by making false, fabricated, fictitious and outright libelous statements," and that Gwynn's statements "constitute egregious conduct constituting malice or other dishonest, unfair, or improper means." (See SAC ¶¶ 63, 66.) The SAC does not allege any action by Gwynn that was specifically targeted at Plaintiff's relationship with the Show, nor does the SAC contain any non-conclusory allegations from which the Court can infer that Gwynn was aware of Plaintiff's relationships with various third-party businesses, or that Gwynn's statements were made with the intent to disrupt those relationships. Although certain Articles contain statements from former contestants urging that the Show be cancelled (see First May 23 Article at 1-2), the SAC identifies no similar statement attributable to Gwynn. Moreover, to the extent that Plaintiff relies upon conclusory allegations regarding Gwynn's knowledge of the falsity of her statements to support his claim for intentional interference with a prospective economic relationship, the Court finds, for reasons substantially similar to those identified in connection with Plaintiff's defamation claim, that those allegations

lack sufficient specificity to support a plausible inference that Gwynn utilized "dishonest, unfair, or improper means."

Because Plaintiff's alleged injury flows from harm to his business reputation, and because Plaintiff pleads no specific facts from which the Court can infer the purpose behind Gwynn's statements or, as explained above, the existence of any "dishonest, unfair, or improper means," Plaintiff's claim for intentional interference with a prospective economic relationship is dismissed with respect to Gwynn.

Request for Leave to Replead

Plaintiff's opposition to the motion includes a request for leave to replead. The request will be granted to the extent that Plaintiff will be permitted to make a motion, accompanied by a proposed Third Amended Complaint, for leave to replead his claims with respect to Gwynn.

<u>CONCLUSION</u>

For the foregoing reasons, Gwynn's motion to dismiss is granted, and the SAC is dismissed with respect to Gwynn.  This dismissal is without prejudice to an application for leave to file a Third Amended Complaint.  Any such motion must be filed by **May 7, 2019**, and be accompanied by a proposed Third Amended Complaint, a blackline comparison of the proposed Third Amended Complaint and the SAC, and a memorandum of law.  If Plaintiff does not timely move for leave to amend, or if the motion is denied as futile, the SAC will be dismissed with prejudice as to Gwynn.  This Memorandum Opinion and Order resolves docket entry no. 49.

SO ORDERED.

Dated: New York, New York
April 16, 2019

<u>/s/ Laura Taylor Swain</u>
LAURA TAYLOR SWAIN
United States District Judge